# NOTE

July 31, 2007                    Philadelphia                    PENNSYLVANIA
[Date]                            [City]                          [State]

1538 N. 10th Street, #C
Philadelphia, PA  19134
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 82,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Sovereign Bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on September 01, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1130 Berkshire Blvd., Wyomissing, PA  19610
                                    or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 538.69       .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                                        Form 3200 1/01
Wolters Kluwer Financial Services
VMP ®-5N (0207).02
Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000% of any overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

This is a contract under seal and may be enforced under 42 PA. C.S. Section 5529(b).

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____/s/ Sandra Moore_____ (Seal)   _____ (Seal)
Sandra Moore                    -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                   -Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
THIS _____ DAY OF _____ 20__
SOVEREIGN BANK

_/s/ Craig D. Vogur__
CRAIG D. VOGUR / VICE PRESIDENT

*[Sign Original Only]*

VMP®-5N (0207).02                       Page 3 of 3                       Form 3200 1/01

Documents prepared by: Sheri Madara
On (Date): May 15, 2009
Parcel ID# ▮▮▮▮▮▮▮

After recording return to:
Sovereign Bank 10-6438-MD4
601 Penn St. Reading, PA 19601

**THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.**

This Loan Modification Agreement ("Modification") is effective June 1, 2009, between Sandra Moore ("Borrower"), and Sovereign Bank, ("Lender") and amends and supplements (1) the Note (the "Note") made by the Borrower, dated July 31, 2007, in the original principal sum of U.S. $82,000.00, and (2) the Mortgage, Deed of Trust or Deed to Secure (the "Security Instrument"), recorded on August 2, 2007 in Document 51748080, in Commissioner of Records, City of Philadelphia, Pennsylvania. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property describe in the Security Instrument (and defined in the Security Instrument as the "Property"), which is located 1538 N. 10th Street #C, Philadelphia, Pennsylvania 19134. That real property is described as:

See description attached hereto and made a part hereof.

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In consideration of the agreements made in this Modification, and other good and valuable consideration and Security Instrument as follows: The Borrower and the Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1. The Borrower represents that the Borrower __X__ is, _____ is not, the occupant of the Property.
2. The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and

expenses, in the total amount of $7,865.85 have been added to the indebtedness under the terms of the Note and Security Instrument. As of June 1, 2009 the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $89,158.84.

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.8750% (fixed rate), beginning June 1, 2009. The Borrower promises to make monthly payments of principal and interest of U.S. $545.98, beginning on the 1st day of July, 2009, and continuing thereafter on the same day of each succeeding month. If on June 1, 2049 (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the modified Maturity Date. The Borrower will make such payments to Sovereign Bank, PO Box 12649, Reading, PA 19612 or at such other place as the Lender may require.

4. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

6. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

[Check applicable box(es)]

☐ 1-4 Family Rider - Assignment of Rents

☐ Modification due on transfer rider

[To be signed by all Borrowers, endorsers, guarantors, sureties, and other parties signing the Note or Security Instrument].

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement.

SOVEREIGN BANK
Successor to

_____
Constance M. Cocroft, Vice President

COMMONWEALTH OF PENNSYLVANIA, BERKS COUNTY SS:

On this, the ___ day of _____, 2009, before me, a Notary Public, personally appeared Constance M. Cocroft, Vice President, who acknowledged herself to be the Vice President of Sovereign Bank, a corporation, and that she as such Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the Corporation by herself as Vice President.

_____
Kathleen Weidenhammer, NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathleen Weidenhammer, Notary Public
City of Reading, Berks County
My Commission Expires Jan. 14, 2012
Member, Pennsylvania Association of Notaries

_____
Sandra Moore, Borrower

STATE OF Pennsylvania :
Philadelphia COUNTY SS:

On this, the 19 (day) of May (month), 2009, before me, a Notary Public, personally appeared Sandra Moore, Borrower, known to me (or satisfactorily proven), to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that they executed the same for the purposes here in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Kristen Temme, NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KRISTEN TEMME, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 15, 2010

Original

# ERROR AND OMISSIONS/COMPLIANCE AGREEMENT

The undersigned Borrower(s) for and in consideration of the Loan Modification Agreement offered by Lender, its successors and/or assigns in the amount of $89,158.84, modifying the original Promissory Note secured by a Security Instrument dated July 31, 2007 agrees to fully cooperate with any reasonable requests made by Lender, or its agent, to correct typographical errors in the Loan Modification Agreement enabling Lender to sell, convey, guarantee or obtain insurance for any investor or institution, including but not limited to, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any municipal bonding authority, to ensure enforceability of the Loan Modification Agreement. Requests may include, but are not limited to, all changes, corrections, re-execution or modification of any document related to such loan, as may be required.

The undersigned will comply with all requests within thirty days from the date they are made by Lender or its agent. If the Borrower(s) fail to meet his/her/their obligations, Borrower(s) acknowledge liability for all costs including, but not limited to, actual expenses, legal fees, court costs, and marketing expenses incurred by Lender to enforce its rights under the Loss Mitigation Agreement.

Dated effective this  19  (day) of May (month), 2009

_/s/ Sandra Moore_
Sandra Moore, Borrower

_____County SS:

On this, the 19 (day) of May (month), 2009, before me, a Notary Public, personally appeared Sandra Moore, Borrower, known to me (or satisfactorily proven), to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes here in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_/s/ Kristen Temme_
Notary Public

> COMMONWEALTH OF PENNSYLVANIA
> NOTARIAL SEAL
> KRISTEN TEMME, Notary Public
> City of Philadelphia, Phila. County
> My Commission Expires June 15, 2010

Issued By

Commonwealth Land Title Insurance Corporation



## SCHEDULE A
- continued -

### LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground.

SITUATE in the City and County of Philadelphia, Pennsylvania and described according to a certain plan thereof known as Plan of Jefferson Manor made by DiCroce and Leapson, Civil Engineers and Surveyors dated April 12, 1985 as follows, to wit.

BEGINNING at an interior point said point being 64.38 feet West from the westerly side of 10th Street (50 feet wide) and 242.36 feet North from the North side of Jefferson Street (50 feet wide).

CONTAINING in front or breadth Westerly along the Common Space 17.95 feet and extending of that width in length or depth Northerly between lines parallel to 10th Street 69.12 feet to a 5 feet wide alley.

Being lot No. 37 as shown on plan.

Being No. 1535 North 10th Street, (Unit C)

Being the same premises which J.M.D.C., Inc., a Pennsylvania non-profit Corporation by Deed dated 8/21/1989 and recorded 9/12/1989 in Philadelphia County in Deed Book FHS 1436 Page 576 conveyed unto Luella Jones and Ernest E. Jones, with the right of survivorship and not by tenants in common, in fee.

AND the said Luella Jones departed this life on 02/16/2007.

Parcel #  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

-4-

Schedule A - Page 2 Commitment N:
This commitment is invalid unless the Information
Sheet and Schedules A and B are attached